

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3933 | **DATE** | 9/17/2002 |
| **CASE TITLE** | Underwriters Laboratories, Inc. Vs. Solarcom LLC et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is denied. Status hearing set for October 8, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 18 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 13 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 02 SEP 18 AM 8:28 Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNDERWRITERS LABORATORIES INC., a not-for-profit Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | No. 02 C 3933 |
| SOLARCOM LLC, a Georgia limited-liability company, and SOLARCOM HOLDINGS, INC., a Georgia corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

DOCKETED

SEP 1 8 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Underwriters Laboratories, Inc. (Underwriters) brought this action against defendants Solarcom, LLC and Solarcom Holdings, Inc. (collectively, Solarcom) seeking a declaratory judgment, declaring their rights under a contract signed in January 2002. Plaintiff alleges that defendants should be estopped from charging "interim rent" under the contract, that defendants fraudulently induced the plaintiff to sign the contract and that defendants violated the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 505/1 *et seq.* Defendants have filed a motion to dismiss for failure to state a claim, and, for the following reasons, that motion is denied.

## BACKGROUND

The facts of this case are taken from the plaintiff's complaint. Underwriters, an independent, not-for-profit certification organization, purchased Oracle software and originally financed the purchase through Oracle Credit Corporation. Before Underwriters made any payments for the software, Solarcom, being in the business of equipment-leasing and

13

financing, and having previously leased equipment to Underwriters, sent Underwriters an unsolicited offer to finance the purchase over a three-year period.

Under the terms of the agreement Underwriters would make twelve quarterly payments of $1,116,000.00 to Solarcom. Solarcom asked Underwriters to sign a form equipment lease schedule (master lease schedule), even though the deal did not involve equipment or a lease. Underwriters had the software in its possession before it signed the agreement and an addendum to the master lease schedule was prepared in which Solarcom acknowledged that they had no legal interest in the software.

While considering Solarcom's offer, members of Underwriters' information technology, finance and purchasing departments specifically asked Solarcom to confirm that the finance transaction would be limited to the twelve quarterly payments. In late December 2001 and early January 2002, Solarcom's account executive, Jim Kohl, confirmed this to Underwriters' manager of corporate purchasing, manager of financial analysis, and chief information officer. Kohl further confirmed to Underwriters that no payments would be due until June 30, 2002. Also, immediately before Underwriters' chief information officer signed the agreement, Kohl assured Underwriters that payments would be limited to the twelve quarterly payments.

On February 4, 2002, before the first scheduled payment, Solarcom sent Underwriters an invoice for $930,000. Underwriters asked for an explanation and Kohl informed them that the $930,000 was an additional payment for "interim rent" beyond the twelve quarterly payments.[1] Solarcom did not tell Underwriters what it had rented.

---

[1] Paragraph 11 of the Master Lease Schedule provides, in part, "Interim rent will be calculated on a ninety day basis from the Commencement Date until the last day before the first day of the Quarter Begin Date." "Commencement Date" is defined as "the earlier of the day by which all the Equipment is installed or the fifth day after delivery if you cause a delay in installation."

Underwriters refused to pay the invoice and on May 15, 2002, notified Solarcom in writing of its refusal, claiming that no rent was due because Solarcom had never leased or rented any property to Underwriters. It argued that if interim rent was due under the terms of the master lease schedule Solarcom had materially misrepresented the agreement; that it had entered into the agreement with the understanding that only the twelve quarterly payments would be due – it would not have entered into the agreement had it understood that the interim rent was part of the financing arrangement. As part of the May 15 letter, Underwriters offered to fully reimburse Solarcom for its payments to Oracle and include an additional $199,536.20, for a total of $12,397,289.20.

## DISCUSSION

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must assume the truth of all well-pleaded allegations, making all inferences in the plaintiff's favor. <u>Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund</u>, 25 F.3d 417, 420 (7th Cir. 1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

Plaintiff's complaint includes four counts. Count I asks for a declaratory judgment declaring its rights under the contract. Plaintiff has four theories to support a declaratory judgment in its favor. First, under the terms of the contract, as written, no rent is due. Second, Solarcom is in default of the agreement. Third, the agreement should be rescinded due to unilateral, material mistake of fact. Fourth, the agreement is void *ab initio* due to fraudulent inducement. Count II alleges that Solarcom is estopped from charging the rent


based on promissory estoppel. Count III alleges that the master lease schedule is unenforceable due to fraudulent inducement. Count IV alleges that Solarcom violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*[2]

Reasonable Reliance

Plaintiff essentially claims that Solarcom materially misrepresented the agreement to induce Underwriters to sign the master lease schedule. To support its claims, Underwriters must allege that it reasonably relied upon these misrepresentations.[3] Solarcom attacks each of the claims, arguing that the contract was a fully integrated statement of the parties' intentions[4] and plaintiff cannot plead reliance on representations that contradict the written language of the contract. When a contract is reduced to writing "the intention with which it was executed must be determined from the language used and is not to be changed by extrinsic evidence." Perry v. Community Action Services, 82 F. Supp.2d 892 (N.D. Ill. 2000). While reasonable reliance is usually a question of fact, it may be decided as a matter of law if "no trier of fact could find that it was reasonable to rely on the alleged statements." Cozzi Iron & Metal Inc. v. U.S. Office Equip., Inc., 250 F.3d 570, 574 (7th Cir. 2001).

---

[2] We note here that plaintiff has not fully plead diversity jurisdiction. In its pleadings, Underwriters states only that, "Solarcom LLC is a Georgia limited-liability company." In determining the citizenship of Solarcom, an LLC, for diversity purposes, the citizenship is determined by *each* of the LLC's members. *See* Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998).

[3] *See* Strohmeier v. Yemm Chevrolet, 2001 WL 1397919, *8 (N.D. Ill. 2001) (listing elements of fraudulent inducement); Brzozowski v. Northern Trust Co., 618 N.E.2d 405, 409 (Ill. App. Ct. 1993) (listing elements of rescission due to material mistake); A-Abart Elec. Supply, Inc. v. Emerson Elec. Co., 956 F.2d 1399, 1404 (7th Cir. 1992) (listing elements of promissory estoppel); Pinski v. Adelman, 1995 WL 669101 (N.D. Ill. 1995) (listing elements of a claim under 815 ILCS 505/2).

[4] Specifically, Paragraph 21 of the Master Lease Schedule provides, "This Master Lease, Appendum A and each schedule are the complete agreements regarding the Equipment listed in the schedule and replace any prior oral or written communications between you and Solarcom." There is a similar clause in the Software Addendum.

If the parties had used documents tailored to the nature of the transaction – the lending of money – and had included a clause specifying that interest was payable at a specified rate for the period from the date the funds were advanced to the beginning of the quarterly period, plaintiff would have nothing to complain about. That is a clear and unambiguous recitation of the borrower's obligations, and the borrower could neither rely upon a concept of extrinsic ambiguities, <u>Air Safety, Inc. v. Teachers Realty Corp.</u>, 236 Ill. Dec. 8, 706 N.E.2d 882 (Ill. 1998), nor insist that it reasonably relied upon contradictory oral representations

But that is not what happened. Instead, the parties used defendant's form documents for leasing equipment as the basis for their transaction, with some changes. It was a matter of trimming a square hole to accommodate a round peg, and the trimming did not result in a perfect fit. Indeed, it is beyond dispute that many of the provisions had no relevance to the transaction because they related to the leasing of equipment, which this was not. There is a clear provision for interim rent, although, from defendant's perspective, that really referred to interest, and there is a designated commencement clause, although the date is unrelated to the form definition of commencement date. According to defendant, that is enough. According to plaintiff, it is not, because it can establish that, in reliance upon the representations made to it, it reasonably understood that interim rent was but one of the various provisions that had no relationship to this transaction. We agree that the form of the transaction creates a sufficient ambiguity and uncertainty so as to permit plaintiff to go forward. While plaintiff relies upon several legal theories, the crux of the dispute is as we have just described, and the contours of that dispute control the outcome of each of the attacks upon the present pleadings.

Pleading Standards

Defendants argue that the fraud claims should be dismissed because plaintiff does not allege fraud with sufficient particularity.[5] Under Rule 9(b), "[i]n all averments of fraud or mistake the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The circumstances of an alleged wrongdoing include "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992). Particularity, means the "who, what, when, where and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir. 1990).

In their complaint, Underwriters alleges that (1) Jim Kohl, Solarcom's account executive, made the false or misleading statements; (2) he told Underwriters that payment would be limited to the twelve quarterly payments; (3) he made the statements in late December 2001 and early January 2002; and (4) he made them to Underwriters' manager of corporate purchasing, manager of financial analysis, and chief information officer. The basic consideration in determining the sufficiency of a complaint is whether the adverse party has adequate notice to prepare a responsive pleading. Petri v. Gatlin, 997 F. Supp. 956, 975 (N.D. Ill. 1997). It is not enough if defendants are "left guessing as to the outlines of the fraud, its purposes, or the critical facts which are purportedly misrepresentations." Barr Co. v. Safeco Ins. Co. of Am., 583 F. Supp. 248, 259 (N.D. Ill. 1984). Underwriters has provided enough information for Solarcom to prepare a responsive pleading. Underwriters alleges that all

---

[5] Claims brought under the ICFA must meet the same heightened pleading requirements of Rule 9(b) as common law fraud claims. Petri v. Gatlin, 997 F. Supp. 956, 973 (N.D. Ill. 1997).

statements were made by one person at Solarcom; that they were made in a short time period; and that all were related directly to the number of payments Underwriters would make under the master lease schedule. All of the alleged statements were made to three Underwriters employees. While Underwriters does not state the specific situations of the conversations, Solarcom is not left guessing as to the circumstances surrounding the alleged fraud and may respond accordingly.

IFCA

Solarcom argues that Underwriters cannot state a claim as a consumer under the ICFA. Business plaintiffs must make a stronger showing than traditional consumers to have standing under the ICFA. Commonwealth Ins. Co. v. Stone Container Corp., 2001 WL 477151, *4 (N.D. Ill. 2001). A business filing suit under the Act must allege either that the harm was a result of conduct directed to the market or otherwise implicates consumer protection concerns; or that the plaintiff was acting as a customer of the defendant and the alleged fraud amounts to more than merely a breach of contract. *Id., citing* Zimmerman v. Waste Ltd., II, 1997 WL 159188 (N.D. Ill. 1997). Underwriters alleges that Solarcom made an offer to finance this transaction, and that in accepting this offer, Underwriters became a consumer of Solarcom's services.[6] The allegations are more than merely breach of contract claims. Moreover, because the offer from Solarcom was unsolicited, the alleged fraudulent conduct implicates Illinois' interest in protecting its consumers.

Declaratory Relief

Finally, defendants argue that declaratory relief in this situation is improper. The

---

[6]The statute expressly includes "services." 815 ILCS 505/1(b). The ICFA does apply to lending and financial services. Sharp v. Chartwell Fin. Serv., Ltd., 2000 WL 283095, at *5 (N.D. Ill. 2000).

Declaratory Judgment Act allows a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Such an action is appropriate where:

> (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.

Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749 (7th Cir. 1987). The Declaratory Judgment Act does not impose a duty on federal courts to declare the parties' rights. Instead, it is a matter for the court's discretion. Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112 (1962). At issue here is whether Underwriters properly seeks a declaration of its rights under the master lease schedule.

Solarcom demanded on February 4, 2002, that Underwriters pay $930,000 in interim rent. Underwriters refused to do so and notified Solarcom of their refusal to do so in writing on May 15, 2002. Solarcom has not yet taken any action to secure the money and Underwriters fears that Solarcom may do so at any time. A request to construe the language of a contract to apprise the parties of their rights falls within the scope of the Federal Declaratory Judgment Act. Household Financial Services, Inc. v. Northern Trade Mortgage Corp., 1999 WL 782072, *2 (N.D. Ill. 1999). Therefore, declaratory relief here is proper.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

Sept. 17, 2002.